**NIEDWESKE BARBER, P.C.**
98 Washington Street
Morristown, New Jersey 07960
(973) 401-0064
www.n-blaw.com
Attorneys for Plaintiff, Consumer Services, LLC
(CWH 7064)

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CONSUMER SERVICES, L.L.C., <br><br> Plaintiff, <br><br> v. <br><br> COLD COFFEE AMERICA, INC., DARRELL CRESWELL, individually, JOHN and/or JANE DOES 1-5, and ABC Corporations 1-5, <br><br> Defendants. | Civil Action No. 06-2892 (JAG) <br><br><br> **COMPLAINT AND JURY DEMAND** |

Plaintiff, Consumer Services, L.L.C. ("Consumer Services"), through its attorneys Niedweske Barber, P.C., 98 Washington Street, Morristown, New Jersey, 07960, by way of Complaint against Cold Coffee America, Inc. ("CCA"), Darrell Creswell, individually ("Creswell"), John and/or Jane Does 1-5, and ABC Corporations 1-5, states as follows:

## I.   THE PARTIES

1.   Plaintiff Consumer Services, L.L.C., is a New Jersey corporation with its principal place of business located at Post Office Box 171, Roseland, New Jersey 07068. Mr. Joseph R. Postiglione, Senior, is the President of plaintiff Consumer Services.

1

2. Defendant Cold Coffee America, Inc., (hereinafter "CCA") is a Colorado corporation with its principal place of business located at 952 South Interstate 25, Castle Rock, Colorado, 80104.

3. Defendant Darrell Creswell is a resident of Colorado with an address of 5940 Tradewind Point, Colorado Springs, Colorado, 80917. Defendant Creswell is also President of defendant CCA.

4. Defendants John and/or Jane Does 1-5 are individuals that knowingly aided and abetted, or otherwise engaged in illegal conduct regarding the efforts of defendants CCA and/or Darrell Creswell in connection with plaintiff Consumer Services' investment in CCA's "Starbucks Refreshment Center" distributorship in New Jersey. Upon information and belief, defendants John and/or Jane Does 1-5, are individuals, who, among other things, provided financing and/or participation in the creation and implementation of CCA's "Starbucks Refreshment Center" vending scheme.

5. Defendants ABC Corporations 1-5 are entities that, on information and belief, either improperly received plaintiff Consumer Services' investment of $100,000, tortiously interefered with plaintiff Consumer Services' prospective economic advantage and/or contractual relations, and/or provided financing and/or participation in the creation and implementation of CCA's "Starbucks Refreshment Center" vending scheme.

## II.   JURISDICTION AND VENUE

6. This Court has original jurisdiction based on 28 U.S.C. §1332(a)(1) as the parties are citizens of different states and the amount in controversy exceeds $75,000.00. Venue in this district is proper pursuant to 28 U.S.C. §1391(a)(2) as a substantial part of the events giving rise to the claim occurred in this district.

## III.  FACTS COMMON TO ALL COUNTS

### A. Background

7. In early March, 2006, Mr. Joseph Postiglione was investigating a vending machine distributorship to sell the Red Bull drink product.

8. During this investigation, Mr. Postiglione came into contact with Mr. Joseph DeGesualdo, who Mr. Postiglione had learned was a professional locator and marketing coach involved in the vending machine industry.

9. Mr. DeGesualdo informed Mr. Postiglione of a "higher value" opportunity for a vending machine business that purportedly used Starbucks cold coffee products, and referred Mr. Postiglione to Mr. Michael Capps.

10. Mr. Capps was a Red Bull distributor using the locator and marketing services of Mr. DeGesualdo.

11. Mr. Postiglione and Mr. Capps then communicated about an opportunity to sell Starbucks cold coffee products in vending machines, resulting in Mr. Capps referring Mr. Postiglione to defendant Darrell Creswell, the President of defendant Cold Coffee America, Inc. ("CCA").

12. Mr. Postiglione and Mr. Creswell then had a series of communications, beginning in or about mid-March, 2006, about CCA and the "Starbucks Refreshment Center" distributorships CCA was offering for a substantial investment.

### B. Cold Coffee America's "Starbucks Refreshment Center"

13. Following their initial communications, defendant Creswell mailed a glossy sales prospectus to Mr. Postiglione that described CCA's purported "Starbucks Vending" business opportunity. Exhibit A hereto is one true copy of this prospectus.

3

14. The CCA prospectus displayed, on its cover, color photographs of Starbucks' coffee products such as Frappuccino and DoubleShot. These Starbucks' product images were repeatedly displayed throughout the prospectus.

15. The prospectus also displayed a clear glass door vending machine, or "Starbucks Refreshment Center", that was decorated entirely by Starbucks' name, intellectual property, and product images. In addition to setting forth the mechanical "features" of this refrigerated vending machine, the prospectus claimed "that vending machines with a glass front have a 70% higher vend rate" than vending machines with a covered front.

16. The sales prospectus explained that CCA "offer[ed] a substantial moneymaking opportunity and a solid business where people come to you" because of the "Starbucks Refreshment Center." The prospectus further claimed that "[y]our attention-grabbing Starbucks Refreshment Center will produce great impulse buying from all walks of life."

17. The prospectus described how "to operate a Cold Coffee America/Starbucks Vending Route," which centered on inventory in the Starbucks Refreshment Center, and "highly recommend[ed]" using a "locating service" to "secure contracts, set up your local merchant accounts, and establish your route for you." CCA offered to put an investor "in contact with the placement company and help you every step of the way," and described a "Placement Program" involving "professional locators" to find locations for the investor's Starbucks Refreshment Centers.

18. Numerous different graphics containing Starbucks products were also used throughout the prospectus. These graphics purported to describe "US Total Vending Sales" from 1970 to 2005, in the billions of dollars, and allegedly illustrated the sales of Starbucks' "bottled DoubleShot and Frappuccino" products in millions of dollars since 2003.

4

19. The prospectus claimed that "[i]n the U.S. during 2005, Starbucks sold more than 434 million servings of bottled Starbucks Frappuccino coffee drinks through the North American Coffee Partnership."[1] It further claimed that "[i]t would take 500 Starbucks retail stores open eight hours each day for one full year to make the equivalent servings of Starbucks handcrafted caffe lattes" and that "Starbucks Frappuccino and DoubleShot cold coffee beverages have gained a 93 percent market share in a market that is doubling every year." The prospectus also provided a number of internet web addresses containing publications touting the exploding market for the bottled Starbucks' cold coffee products.

20. The prospectus made a series of different "package offerings" for an investor in CCA's Starbucks Refreshment Center. As an example, for an investment of $118,500, a "Master Distributorship" could be purchased that obtained twenty-five (25) Starbucks Refreshment Center vending machines with 4,824 bottles (9.5 ounce) of Frappuccino and 1,440 cans of DoubleShot products for sales. This investment would also receive signage for each Starbucks vending machine, and "protected distribution rights (territories)" per machine.

21. In order to invest in CCA's Starbucks Vending, a Distributorship and Purchase Agreement was to be completed over the telephone with a CCA representative. CCA would "then complete the transaction" upon receipt of the following: (a) the investor's payment for the requested package; (b) an initialed and signed 5-page Cold Coffee America Terms and Conditions Agreement; and (c) Cold Coffee America's Starbucks Vending Order Form and Purchase Agreement.

C. **Plaintiff's "Master Distributorship" of the Starbucks Refreshment Centers**

22. Following his receipt and review of CCA's Starbucks Vending prospectus from defendant Creswell, Mr. Postiglione and Creswell had a series of communications.

---

[1] The North American Coffee Partnership is a joint venture partnership of PepsiCo and Starbucks Coffee Company.

23. During these communications, which exceeded ten (10) in number and were initiated by Creswell telephonically, via e-mail, and through the U.S. postal system, defendant Creswell advised Mr. Postiglione that he could receive favorable treatment as a distributor of CCA's Starbucks Refreshment Centers as no sales territories had been assigned in New Jersey.

24. Defendant Creswell also represented to Mr. Postiglione that CCA had entered into an agreement with the North American Coffee Partnership for CCA to vend Starbucks' cold coffee products, and that this agreement permitted CCA and its distributors (such as the plaintiff Consumer Services) to use Starbucks Refreshment Center vending machines that would be decorated only with Starbucks' distinctive name, intellectual property, and product images.

25. Defendant Creswell's verbal representations about the design of the vending machines were consistent with the vending machine images depicted in the prospectus Creswell mailed to Mr. Postiglione.

26. Following his numerous representations to and communications with Mr. Postiglione, defendant Creswell mailed to Mr. Postiglione Cold Coffee America's Starbucks Vending Order Form and Purchase Agreement, and the separate 5-page Cold Coffee America Terms and Conditions Agreement.

27. The Order Form and Purchase Agreement specified that plaintiff was investing in twenty (20) Starbucks Refreshment Center vending machines, including 4,320 bottles and/or cans of Starbucks' products.

28. The Terms and Conditions Agreement represented, among other things, that defendant CCA owned the trade name Cold Coffee America, Inc., that CCA's business activities, "taken together, comprise a unique System for the operation of a Vending Route which consists

6

of the purchase and self-placement in retail locations of equipment and the sale of products and services thereby," and that money paid was for Starbucks Refreshment Centers.

29. Consistent with Paragraph 6 of the Terms and Conditions Agreement, because plaintiff purchased a package of twenty (20) Starbucks Refreshment Centers, the plaintiff was designated by CCA as a "Master Distributor" with a "master distributorship" over the following New Jersey counties: (a) Essex (minus Newark); (b) Bergen; and (c) Morris.

30. Exhibit A to the Addendum to the Terms and Conditions Agreement provided that, as a "Master Distributor" of CCA's Starbucks Refreshment Centers, plaintiff had "three ways of receiving compensation." The first way to receive said compensation was described in pertinent part as follows:

> The master distributor will share in a rebate per beverage unit given by Pepsi at [the] end of fiscal year given to Cold Coffee America (CCA); Pepsi has told us at this time that the rebates should be 5-8% of wholesale price per unit from PBG and Pepsi America . . . . Pepsi is in the process of acquiring national links of all PBG and Pepsi America plants for the purpose of a single contract with CCA that will be implemented for the sale of all Pepsi bottled products including all cold coffee producers.

31. Paragraph 7 of the Terms and Conditions Agreement provided that CCA "fulfilled its obligations completely once the initial [Starbucks Refreshment Center] units and products have been shipped."

32. Based upon the representations made to him by defendant Creswell, both verbal and written as aforesaid, plaintiff agreed to invest in CCA's Starbucks Vending system, and to become a "Master Distributor" of CCA's Starbucks Refreshment Centers in the aforementioned three separate New Jersey Counties.

33. On March 29, 2006, plaintiff signed Cold Coffee America's Starbucks Vending Order Form and Purchase Agreement, and initialed and signed the 5-page Cold Coffee America Terms and Conditions Agreement.

34. Also on March 29, 2006, plaintiff paid $95,000 to CCA for the "package cost" for the twenty (20) Starbucks Refreshment Centers with products.

35. On March 31, 2006, on behalf of defendant CCA, defendant Darrell Creswell signed the 5-page Cold Coffee America Terms and Conditions Agreement, as well as Cold Coffee America's Starbucks Vending Order Form and Purchase Agreement.

36. Plaintiff thereafter paid an additional $3,000 to an individual named Dave Evans that CCA recommended as a "professional locator" to place the Starbucks Refreshment Centers plaintiff had purchased.

37. In addition, plaintiff purchased warehouse space for the anticipated Starbucks Refreshment Centers and products, insurance coverage, business cards, and retained an accountant to help manage this new and exciting business venture.

D. **Events Surrounding Execution of the Agreements Evidence Fraud**

38. On or about April 3, 2006, defendant Creswell sent an e-mail to Mr. Postiglione, Joseph DeGesualdo, and Michael Capps containing an image of the "new machine" to be used for the Starbucks Refreshment Centers.

39. Although the "new machine" displayed in this e-mail differed in some ways from that which was displayed in the CCA sales prospectus, this "new machine" nevertheless was fully and completely decorated with the Starbucks name, intellectual property, and product images.

40. Also on or about April 3, 2006, defendant Creswell sent an e-mail to the master distributors depicting Starbucks Frappuccino and DoubleShot products to be used and/or displayed in the Starbucks Refreshment Centers.

41. Following the parties' execution of the aforementioned Agreements, Mr. Postiglione contacted defendant Creswell numerous times about the status of the deal and the Starbucks Refreshment Center vending machines being shipped.

42. Defendant Creswell's response time, if any, to these communications became slower as time passed from when the parties signed the agreements and plaintiff invested nearly $100,000 to be a CCA "Master Distributor." This began to raise issues with the plaintiff about his "Master Distributorship."

43. For example, because of the difference in appearance between the Starbucks vending machine displayed in the prospectus mailed to the plaintiff in March, and the "new machine" as depicted in Creswell's April 3rd e-mail, plaintiff made repeated requests to defendant Creswell for information on the final graphics to be used for the vending machines.

44. On or about May 18, 2006, defendant Creswell finally e-mailed to the plaintiff images of the vending machines to be shipped under the parties' agreement. In complete breach of the contract, and parties' intentions, the vending machines no longer displayed any mention of the Starbucks name, intellectual property, or product images.

45. At no time before this May 18, 2006 e-mail did defendants inform or otherwise advise plaintiff of this substantial, and unacceptable, change to the Starbucks Refreshment Center vending machines.

46. Plaintiff immediately advised defendant Creswell that, in anticipation of defendants' breach of the parties' agreement, the nonconforming vending machines should <u>not</u> be shipped to the plaintiff.

47. The plaintiff subsequently requested that defendants reimburse the $100,000 investment as the Refreshment Center vending machines were not the Starbucks machines plaintiff was induced into purchasing.

48. In response to plaintiff's request for reimbursement, defendant Creswell advised Mr. Postiglione that he had none of the money as it had all been spent on defendants' purported administrative costs, with some money allegedly sent to the vending machine manufacturer, Dixie-Narco, Inc., to make the nonconforming machines.

49. The plaintiff also requested reimbursement of the $3,000 fee paid to the "professional locator" provided by defendants CCA and Creswell. That request has gone unanswered, and the "professional locator," Dave Evans, has not returned a single voice message left by Mr. Postiglione, or replied to e-mails regarding same.

50. On information and belief, defendant CCA, including its President, defendant Darrell Creswell, knew that CCA did <u>not</u> have an agreement in place at any time that provided it with the right to use Starbucks' name, intellectual property, and/or product images on the Starbucks Refreshment Center vending machines.

51. On information and belief, defendant CCA, including its President, defendant Darrell Creswell, knew that CCA did <u>not</u> have the right to use Starbucks' name, intellectual property, and/or product images as of late March, 2006.

52. On information and belief, defendant CCA, including its President, defendant Darrell Creswell, possessed this knowledge when defendant provided the sales prospectus to plaintiff, and <u>before</u> plaintiff tendered its payment on March 29, 2006.

53. On information and belief, defendant CCA, including its President, defendant Darrell Creswell, possessed this knowledge while affirmatively misrepresenting to plaintiff Consumer Services, and its President Joseph Postiglione, that CCA <u>did</u> have the right to use Starbucks' name and intellectual property on the Starbucks Refreshment Center vending machines.

54. On information and belief, defendant CCA, including its President, defendant Darrell Creswell, intentionally omitted from any communications to plaintiff Consumer Services, and its President Joseph Postiglione, the fact that CCA did not have the right to use Starbucks' name, intellectual property, and/or product images on the vending machines.

55. On information and belief, CCA displayed Starbucks Refreshment Center vending machines in the sales prospectus defendant Creswell mailed to Mr. Postiglione without the authorizations necessary for CCA to use Starbucks' name, intellectual property, and/or product images on those vending machines.

56. On information and belief, in or about mid-April, 2006, defendant CCA, including its President, defendant Darrell Creswell, allegedly provided finalized graphics to Dixie-Narco for the cold coffee vending machines that contained <u>no</u> mention of the Starbucks name or intellectual property.

57. Defendant CCA, through its President Darrell Creswell, made affirmative misrepresentations to the plaintiff regarding the vending machine to be used in CCA's alleged Starbucks Refreshment Centers, CCA's right to use Starbucks' name, intellectual property, and

11

product images, and the nature of CCA's relationship with the North American Coffee Partnership.

58. Defendant CCA, including its President, defendant Darrell Creswell, intentionally concealed from the plaintiff the final graphics and related information conveyed to Dixie-Narco regarding the vending machines. That information was not disclosed to plaintiff until May 18, 2006.

59. Defendant CCA, through its President Darrell Creswell, intentionally omitted, or knowingly concealed information to the plaintiff regarding the vending machine to be used in CCA's alleged Starbucks Refreshment Centers, CCA's right to use Starbucks' name, intellectual property, and product images, and the nature of CCA's relationship with the North American Coffee Partnership.

60. On information and belief, CCA has been directed to cease and desist from its unauthorized use of the Starbucks name, intellectual property, and/or product images in any manner on the CCA vending machines, as well as to cease and desist from using Pepsi Bottling or Pepsi in general as the source of "wholesale" Starbucks cold coffee products.

61. On information and belief, CCA has been directed to cease and desist from its unauthorized use of any Starbucks products in any CCA vending machines.

62. CCA's website was updated in May, 2006, to indicate that business opportunities allegedly existed with "Cold Coffee Refreshment Centers," not Starbucks Refreshment Centers.

63. CCA's updated website displayed a cold coffee vending machine that did not bear Starbucks' name, intellectual property, or product images.

64. Based on the foregoing, plaintiff Consumer Services, LLC, has been caused, and continues to be caused, substantial money damages based on defendants' conduct.

12

## FIRST COUNT

## VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT

65. Plaintiff Consumer Services, LLC, repeats and realleges the previous paragraphs as if fully set forth at length herein.

66. Plaintiff Consumer Services, LLC, is a "person" entitled to file suit under the New Jersey Consumer Fraud Act.

67. Defendant Cold Coffee America, Inc., is a "person" subject to the New Jersey Consumer Fraud Act.

68. Defendant Darrell Creswell is a "person" subject to the New Jersey Consumer Fraud Act.

69. Defendants engaged in unconscionable commercial practices by using deception, fraud, false pretense, false promise, and/or misrepresentations of material fact to the plaintiff regarding CCA's purported Starbucks Refreshment Centers.

70. Defendants engaged in unconscionable commercial practices through the knowing concealment, suppression, or omission of material fact with the intent that the plaintiff rely upon such concealment, suppression or omission, in connection with the sale and/or advertisement of CCA's purported Starbucks Refreshment Centers.

71. Defendants' advertisement of merchandise was part of a plan or scheme not to sell the item or service so advertised.

72. Defendants' aforesaid misconduct violated the plaintiff's rights under the New Jersey Consumer Fraud Act.

73. Defendants' aforesaid misconduct has caused the plaintiff ascertainable losses and other damages recoverable under the New Jersey Consumer Fraud Act. N.J.S.A. 56:8-19.

**WHEREFORE**, Plaintiff Consumer Services, L.L.C., demands judgment against defendants Cold Coffee America, Inc., and Darrell Creswell, jointly and severally, as follows:

(a) threefold plaintiff's damages;

(b) punitive damages;

(c) plaintiff's reasonable attorney's fees, filing fees and reasonable costs of suit;

(d) pre- and post-judgment interest; and

(e) any other relief the Court deems equitable and just.

## SECOND COUNT

### BREACH OF CONTRACT

74. Plaintiff Consumer Services, L.L.C., repeats and realleges the previous paragraphs as if fully set forth at length herein.

75. Plaintiff and defendants entered into a contract regarding defendant CCA's purported Starbucks Refreshment Centers.

76. Defendants failed to perform pursuant to the parties' contract, and have breached that contract.

77. Plaintiff has been caused damages by defendants' breach of contract.

**WHEREFORE**, plaintiff Consumer Services, L.L.C., demands judgment against defendants Cold Coffee America, Inc., and Darrell Creswell, jointly and severally, as follows:

(a) compensatory damages;

(b) consequential damages;

(c) expectation damages;

(d) punitive damages;

  (e)  pre- and post-judgment interest; and

  (f)  any other relief the Court deems equitable and just.

## THIRD COUNT

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

78. Plaintiff Consumer Services, L.L.C., repeats and realleges the previous paragraphs as if fully set forth at length herein.

79. Implied in the contract is the covenant of good faith and fair dealing.

80. As set forth herein, defendants' bad faith conduct in connection with the parties' Agreement has breached the implied covenant.

81. As a result of defendants' breach, plaintiff has and continues to suffer damages.

**WHEREFORE**, plaintiff Consumer Services, L.L.C., demands judgment against defendants Cold Coffee America, Inc., and Darrell Creswell, jointly and severally, as follows:

  (a)  compensatory damages;

  (b)  consequential damages;

  (c)  expectation damages;

  (d)  punitive damages;

  (e)  pre- and post-judgment interest; and

  (f)  any other relief the Court deems equitable and just.

**NIEDWESKE BARBER, P.C.**
Attorney for Plaintiff
Consumer Services, L.L.C.

By *[signature]*
Christopher W. Hager (CWH 7064)

Dated: June 23, 2006

15

## JURY DEMAND

Plaintiff herein demands a trial by jury on all triable issues.

NIEDWESKE BARBER, P.C.
Attorneys for Plaintiff
Consumer Services, L.L.C.

By: _____
Christopher W. Hager (CWH 7064)

Dated: June 23, 2006

## DESIGNATION OF TRIAL COUNSEL

Christopher W. Hager is hereby designated as trial counsel in the within matter.

NIEDWESKE BARBER, P.C.
Attorneys for Plaintiff
Consumer Services, L.L.C.

By: _____
Christopher W. Hager (CWH 7064)

Dated: June 23, 2006

## CERTIFICATION

I hereby certify that his matter is not the subject of any other action pending in any Court or a pending Arbitration proceeding, nor is any other action or Arbitration proceeding contemplated. All parties known to Plaintiff at this time who should have been joined in this action have been joined.

NIEDWESKE BARBER, P.C.
Attorney for Plaintiff
Consumer Services, L.L.C.

By: *Christopher W. Hager*
Christopher W. Hager (CWH7064)

Dated: June 23, 2006